UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEYRON LAMONTE BINNS,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE CO., et al.,<br><br>    Defendants. | No. 2:20–cv–1120–TLN–KJN PS<br><br>FINDINGS AND RECOMMENDATIONS<br>ANCILLARY ORDER<br><br>(ECF Nos. 17, 29, 41.) |

Plaintiff, an incarcerated person proceeding without counsel, brings this action for breach of contract, fraud, and civil rights violations against defendant American General Life & Accident Insurance Co. ("AGL") and several named and unnamed employees thereof.[1] (ECF No. 12.) Plaintiff also requests joinder of an involuntary plaintiff and judicial notice. (ECF Nos. 17, 41.)

AGL and defendant Duperreault waived service and filed the instant motion to dismiss. They raise a factual attack on the amount in controversy for purposes of subject matter jurisdiction, and assert the complaint fails to state a claim for breach of contract against AGL or any of its employees, fails to provide plausible facts to support his fraud claims under heightened pleading standards, and fails to establish personal jurisdiction over Duperreault. (ECF No. 29.)

For the reasons set forth below, the undersigned recommends plaintiff's claims be

---

[1] This case proceeds before the undersigned by 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Local Rule 302(c)(21). See Local Rule 304.

1

dismissed and this case be closed.

**Background**

Plaintiff alleges that in 1954, his grandmother Elizabeth Daw purchased a life insurance policy (the "Policy") on the life of her daughter, Pamela Alice Morris, Binns's mother. Daw tendered a one-time payment at the Policy's inception, plus a premium on the Policy for the next twenty years. Daw passed in 1984. The Policy matured in 2016, and Morris passed in 2017. Thereafter, Binns and his brother Sharif Ali Gentry discovered Policy papers in Morris's belongings, then reached out to defendant AGL. AGL required a change of beneficiary form, and Gentry completed this so that he and Binns would be the Policy's beneficiaries.

On January 8, 2018, AGL informed Binns that it "acknowledge[d] the claim on Pamela Morris," but informed him that the company needed proof of Morris's death. Thereafter, AGL tendered payment of $500.60 each to Binns and Gentry. Binns did not cash the check, but instead questioned the amount based on the Policy documents in his possession. On April 2, 2018, AGL informed Binns that it no longer needed the proof of death, cancelled the first check, and tendered payment to Binns and Gentry each for $501.84. Binns did not cash this check either, but throughout 2018 continued to press his concerns with AGL over the Policy's terms. Binns believed that in 1955, his grandmother paid a $220 up-front payment on the Policy, plus a weekly premium of $55 over twenty years, for a Policy with 3% interest accruing. AGL's position was that Daw paid $28.60 per year, or $0.55 per week, from 1954-74, for a $1,000 benefit with no accrued interest. Binns filed complaints with the state and Better Business Bureau, but no action was taken.

In June of 2020, Binns filed a complaint in this court against AGL, its President and CEO Brian Duperreault, five other named employees, and multiple Doe employees of AGL. (ECF No. 1.) The currently-operative first amended complaint ("1AC") asserts claims for fraud, breach of contract, and Section 1983 liability. (ECF No. 12-1.) Binns claims Daw paid premiums of $57,200, and AGL owes a total of $838,085.04 in benefits and interest over 63 years plus $150 million in punitive damages. (ECF No. 12-1 at 16-17.) Included in plaintiff's original complaint (ECF No. 1) are communications between Binns and AGL—including documents for the Policy

2

(pp. 47-77), and (inexplicably) multiple of Binns's mental-health records (pp. 78-92).

**Legal Standards**

"When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim." Cannon v. Harco Nat'l Ins. Co., 2009 WL 10725673, at *2 (S.D. Cal. July 16, 2009) (citing Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979)). A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) "may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Courts may consider extrinsic evidence, including "affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

To establish federal subject matter jurisdiction under diversity rules, the proponent must allege (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1); McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189, (1936). To determine whether Section 1332(a)'s amount in controversy requirement is met, the court utilizes the "legal certainty" test. See Pachinger v. MGM Grand Hotel–Las Vegas, Inc., 802 F.2d 362, 363–64 (9th Cir. 1986). Under this test, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938). The Ninth Circuit recognizes three situations that clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction. Naffe v. Frey, 789 F.3d 1030, 1040 (9th Cir. 2015) (quoting Pachinger, 802 F.2d at 364). Simply, a court "must not blindly accept conclusory jurisdictional allegations." Smith v. Kraft Foods, Inc., 2008 WL 11337485, at *2 (S.D. Cal. Sept. 12, 2008).

3

**Analysis**

Plaintiff's complaint states that he and his brother-in-law Gentry are the beneficiaries of an insurance policy currently held by defendant AGL, purchased by his late grandmother, Daw, on the life of his mother, Morris. (ECF No. 12.) Plaintiff's first amended complaint claims compensatory damages of $838,000, which allegedly includes a "net single premium of "$57,200, non-forfeiture benefits of "at least $20,267.66, and interest of approximately $830,000; plaintiff also seeks $150 million in punitive damages. (Id. at 39-41.) Facially, the complaint satisfied the amount-in-controversy, and so the undersigned ordered it be served. (ECF No. 14.) Defendants, however, raise a factual challenge to plaintiff's assertions of jurisdiction, arguing plaintiff cannot claim in good faith his entitlement to these damages. To settle this matter, the court turns to the extrinsic evidence submitted by both Binns and AGL. McCarthy, 850 F.2d at 560.

As denoted on Binns's copy of the Policy, submitted alongside his original complaint, the "maximum amount of insurance" is $1,000. (See ECF No. 1 at 56 (schedule from Nation Life and Accident Insurance Co., the policy's originator, issued 8/16/1954, and stating "for ages [] 2 and over the maximum amount is in effect from date of issue [of Policy]"); see also id. at 50 (Daw's application for insurance, denoting policy amount and Morris's DOB at 9/15/1951).) Thus, the contract amount is well below the $75,000 threshold. Naffe, 789 F.3d at 1040 (legal certainty test not used when the terms of a contract limit the plaintiff's possible recovery). This information comports with the Policy documents submitted by AGL. (See ECF No. 29-8 and -10.)

Plaintiff's arguments in his complaint and moving papers are either directly contradicted by the plain language in the documents he submitted or are simply frivolous, such that it is clear plaintiff is not acting in good faith, but instead has so alleged "merely to obtain federal court jurisdiction." Naffe 789 F.3d at 1040; (cf., e.g., ECF No. 12 at 9 (allegations regarding nonforfeiture benefits and interest calculations); with ECF No. 1 at 54 (denoting limited circumstances where nonforfeiture benefits would accrue after lapse in payment by insured) and ECF No. 12 at 8 (alleging Day paid the premiums in full as of July 30, 1974).) To the extent plaintiff challenges the authenticity of any documents, he fails to meet his burden of proof to

show other documents or plausible allegations factually support his assertion of damages for purposes of the amount-in-controversy requirement. Thornhill, 594 F.2d at 733; (cf., e.g., ECF No. 12 at 8 (asserting Daw paid $220 up front plus $55 per week—starting in 1954—on the Policy); with, e.g., ECF No. 1 at 60-77 (scans of Daw's premium receipt book, wherein all weekly premium amounts demonstrate a payment of $0.55).) Further, even assuming the availability of punitive damages (see, e.g., Mock v. Mich. Millers Mut. Ins. Co., 5 Cal. Rptr. 2d 594, 606 (Cal. App. 1992) (allowing for punitive damages in bad-faith insurance claim with clear and convincing evidence of malice, oppression or fraud)), they would be latched to the $1,000 in compensatory damages allowed under the Policy. As the Supreme Court has noted, there are constitutional limitations on the amount of punitive damages awardable in relation to the available compensatory damages, meaning any potential punitive damages would still fail to bring plaintiff's damages over the $75,000 threshold. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003) (noting that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."). For these reasons, the court finds defendants' factual attack on the amount-in-controversy requirement well taken, and finds plaintiff fails to maintain an action that satisfies the $75,000 requirement for diversity jurisdiction.[2]

Further, the court notes plaintiff's first amended complaint also attempts to assert claims against defendants—a private insurance company and employees thereof—under 42 U.S.C. Section 1983. (ECF No. 12 at 5.) This attempt despite the court's explicit prior admonishments. (ECF Nos. 7, 14.) Section 1983 claims are generally inapplicable to private defendants because they do not act "under color of state law." Rabieh v. Paragon Sys. Inc., 316 F. Supp. 3d 1103,

---

[2] Defendants also raise defenses under Rules 12(b)(2) for lack of personal jurisdiction over defendant Duperreault, and failure to state a claim on the breach of contract and fraud claims under Rule 12(b)(6). However, where a court lacks subject matter jurisdiction over a claim, it has no power to rule on the issues in the complaint. See Steinaker v. Sw. Airlines, Co., 472 F. Supp. 3d 540, 546 (D. Ariz. 2020) ("Allegations raised under FRCP 12(b)(1) should be addressed before other reasons for dismissal because if the complaint is dismissed for lack of subject matter jurisdiction, other defenses raised become moot."). Thus, the undersigned refrains from explicitly ruling on defendants' other arguments—even though they are well-taken and would provide alternative bases for dismissal.

1109 (N.D. Cal. 2018) ("It is generally presumed that private individuals and entities do not act 'under color of state law' within the meaning of § 1983.") For clarity, the court now recommends any such claims should be dismissed for failure to state a claim, and any such supplemental jurisdiction on the state-law claims attached thereto be declined. See 28 U.S.C. § 1367.

Because of this recommendation, the court also recommends plaintiff's motion for joinder (ECF No. 17) be denied as moot, and recommends denying the request for judicial notice (ECF No. 41) as the documents are irrelevant to the undersigned's findings.

### **RECOMMENDATIONS and ORDER**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 29) be GRANTED;
2. Plaintiff's Section 1983 claims be DISMISSED WITH PREJUDICE, and his state law claims be DISMISSED for lack of subject matter jurisdiction and supplemental jurisdiction otherwise be DECLINED;
3. Plaintiff's request for joinder (ECF No. 17) and request for judicial notice (ECF No. 41) be DENIED as moot; and
4. The Clerk of Court be directed to CLOSE this case.

In light of these recommendations, the court also ORDERS that all pleading, discovery, and motion practice in this action are STAYED pending resolution of these findings and recommendations. Other than objections to the findings and recommendations or non-frivolous motions for emergency relief, the court will not entertain or respond to any pleadings or motions until the findings and recommendations are resolved.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may

6

waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: July 14, 2021

/s/ Kendall J. Newman
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

binn.112