KEYRON L. BINNS #E94600
FOLSOM STATE PRISON, 1-A1-20U
P.O. Box 950
Folsom, CA. 95763

**FILED**

AUG 13 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

KEYRON LAMONTE BINNS (PLT. #1),   )   Case No. 2:20-CV-1120-TLN-KJN
SHARIF ALI GENTRY SR. (PLT.#2),    )              (PS)
         Plaintiff's,              )
                                   )   OBJECTION TO THE MAGISTRATE
                                   )   JUDGES FINDINGS & RECOMMEND-
v.                                 )   ATIONS, FRCP 72(a)
                                   )
                                   )
AMERICAN GENERAL LIFE &            )
ACCIDENT INSURANCE CO., et al.,    )
         Defendant's.              )

OBJECTION TO THE MAGISTRATE JUDGES
FINDINGS & RECOMMENDATIONS FRCP 72(a)

Plaintiff's objects to the U.S. District Court's Magistrate Judge (KENDALL J. NEWMAN) Findings and Recommendations, pursuant to Federal Rule of Civil Procedures, Rule 72(a), and these Objection's are made in conjunction with the following deemed as true: 1.) Laser copy of both the Insurance Policy (<u>CONTRACT</u>) & Premium Reciept Book to Policy #5433839134; 2.) Declaration's from both Plaintiff's (KEYRON LAMONTE BINNS & SHARIF ALI GENTRY); 3.) Civil Complaint (42 U.S.C. 1983) filed against all the Defendant's (AIG); 4.) All EXHIBIT'S, EXHIBIT "A" SHARIF'S PACKET, EXHIBIT "B" KEYRON'S PACKET, EXHIBIT "C" AIG PACKET 5/23/2018, EXHIBIT "D" AIG PACKET 8/27/2018; 5.) OBJECTION TO THE MOTION TO DISMISS; 6.) OBJECTION TO THE REPLY TO DISMISS; and 7.) the Magistrate judge's Findings & Recommendation's is directly in conflict with the terms of the <u>Contract</u> (Insurance Policy #5433839134), as well as the above factual discovery provided to both the Court and Defendant's (AIG). (See FRCP 26(a)(1)(D) & (2)(A))

1.

Background

Plaintiff's Grandmother (Elizabeth Daw) in 1954 purchased a life incurance policy (The "CONTRACT") on the life of her only child and daughter (Pamela Allice Morris), both plaintiff's Binns & Gentry's mother. Plaintiff's Grandmother (Daw) paid an advanced premium of $220.00 on August 04, 1954, the life insurance agreement #5433839134 (CONTRACT) reveals that weekly premium's of $55.00 were paid for 1040 weeks (20 years), and records demonstrate that plaintiff's Grandmother over-paid in premium's. The Life Insurance Policy #5433839134 were fully paid-up on July 05, 1974, and Daw passed (Died) Feb. 28, 1984. The Insurance Policy #5433839134 (CONTRACT) fully matured on August 16, 2016, but plaintiff's Mother (Insured) passed (Died) Dec. 05, 2017. Thereafter, Sharif Ali Gentry & Saterria Gentry found paper's that revealed Policy Number #5433839134, plus noted that it had fully been paid-up to National Life & Accident Insurance Company, found that (AIG) American General Life & Accident Insurance Company had taken over as the new Insurer, then reached out to them, and initially (AIG) tried to allege that the Insurance Policy #5433839134 (CONTRACT) lapsed, but Plaintiff Sharif Ali Gentry stressed how could a fully paid-off Policy lapse. only then did (AIG) acknowledge the Policy existed. (AIG) required a change of beneficiary, forwarded nine (9) pages to be completed, and certified by an Notary Public, which was done on Dec. 27, 2017, then faxed to (AIG) on Dec. 29, 2017.

On Jan. 8, 2018 (AIG) informed the Plaintiff's that it "acknowledge[d] the claim/policy #0018000859 on Pamela Morris," but informed both plaintiff's that the death certificate recieved by them did not allege the cause of death, because the Policy was fifthy thousand or more a Cause of Death would be required. (See EXHIBIT "A" SHARIF'S PACKET pg. 1; EXHIBIT "B" KEYRON'S PACKET pg. 1) Plaintif (Binns) first reply letter back to the Defendant's (AIG), was to request a copy of the Insurance Policy (CONTRACT), but the Defendant's (AIG) response back were in the form of a

2.

Check in the amount of $500.60. Plaintiff (Binns) second reply to the Defendant's (AIG), were to first question three diffrent things about the Check: 1.) What is it for ? ; 2.) Why was this Check have a diffrent Claim #5433869134, then their initial correspondence Claim #0018000859 ? ; and 3.) Why was not 1% interest added to the benefit of $500.00 ? [Which the Check demonstrates, but .60¢ was only added. This second letter Plaintiff (Binns) again requested a copy of both Insurance Policies [Second Request!], but told the Plaintiff's that they cannot send-out copies of Insurance Policies over 10 years, but provided a copy of the Application for the Plaintiff's records. (See EXHIBIT "B" KEYRON'S PACKET pgs. 1A, 3A, 5A, 6A)  On April 2, 2018 Plaintiff (Binns) this letter in conjunction to the Defendant's (AIG) admitting that they have recieved a <u>Short Proof of Death Form listing the cause of death,</u> but failed to explain what me and my brother (Sharif A. Gentry) have to do in order to recieve the "Money's" owed under the Insurance Policy ? The Defendant's (AIG) responded in the form of another check to Plaintiff (Binns) only, for more money $501.84. (See EXHIBIT "B" KEYRON'S PACKET pgs. 7A, 8A-B)  Defendant's (AIG) on May 23, 2018 submitted <u>EXHIBIT "C" AIG PACKET 5/23/2018</u> [Pages 1-24], which the Defendant's (AIG) tried to pass-off a forged <u>weekly premium</u> that reflected "N/A," plus falsely allege that Plaintiff's Grandmother (Daw) only paid $28.60 annual premiums. (Pages 1-2, 4-10, 18-20) Plaintiff (Binns) call's out the Defendant's (AIG) on this Fraud, the Defendant's (AIG) respond by calling an Investigations. (See EXHIBIT "B" KEYRON'S PACKET pg. 12A)  On August 05, 2018 the Plaintiff (Binns) sends a photo-copy of the real Insurance Policy to the Defendant's (AIG), (See EXHIBIT "B" KEYRON'S PACKET pg. 19A) Defendant's (AIG) on August 27, 2018 submitted <u>EXHIBIT "D" AIG PACKET 8/27/2018</u> [Pages 1-10], which the Defendant's (AIG) now tries to pass-off another forged <u>weekly premium</u> that reflect's ".55¢," and explaining: "<u>Unfortunately, the Schedule page on the information received did not contain the amount of the weekly premium payable to provide coverage.</u>" (See EXHIBIT "D" AIG PACKET 8/27/2018 pg.1,4-10)  Plaintiff (Binns) call's out the Defendant's (AIG) on this Fraud, the Defendant's (AIG) respond by calling an second Investigations. (See EXHIBIT "B" KEYRON'S PACKET pg. 13A)

The Defendant's (AIG) call's two more Investigations on Sept. 11, 2018 and Oct. 08, 2018 (See EXHIBIT "B" KEYRON'S PACKET pgs. 15A-16A), but none of these so-called Investigation's findings or conclusions were ever shared with the Plaintiff's.

Plaintiff's found the Insurance Policy #5433839134 (CONTRACT) in March of 2018, then contacted both the California Department of Insurance (CDI) and Better Business Bureau (BBB) in April of 2018, plus provided each of these Office's with a photocopy of the Insurance Policy #5433839134. Then each of these Office's informed the Plaintiff's to file an Law Suit, because the Court's are better suited to deal with Issue's like these.

Plaintiff's Grandmother (Daw) Insurance Policy #5433839134 (CONTRACT) was with an Tennessee principal place of business (NATIONAL LIFE & ACCIDENT INSURANCE COMPANY), which the <u>weekly premiums</u> were paid to thier Los Angeles Branceh at 1134 West Manchester Ave., L.A., CA. 90044. American General Life & Accident Insurance Company (AIG) took over as the new Insurer's in 1982 sometimes, their principal place of Business is also Tennessee too, and the President & CEO Brian Duperreault was advised about his employee's by plaintiff (Binns) on Oct 1, 2018, never attempted to resolve the problem. (See EXHIBIT "B" KEYRON'S PACKET pg. 20A, 15A)

Legal Standards

The United States Supreme Court held: <u>In re Sawyer</u>, We do not rest our conclusion in this case, in any degree, upon the ground, suggested in argument, that the bill does not show a matter in controversy of sufficient pecuniary value to support the jurisdiction of the Circuit Court; because an apparent defect of its jurisdiction in this respect, as in that of citizenship of parties, depending upon an inquiry into facts which might or might not support the jurisdiction, can be availed of only by appeal or writ of error, and does not render its judgment or decree a nulity. <u>124 U.S. 200, 221, 8 S. Ct. 482, 31 L. Ed 402 (1888)</u>; See also <u>Tex. Propane Gas Ass'n v. City of Houston, 2021 Tex. LEXIS 302 (April 16, 2021)</u> Once the court has diversity jurisdiction, subsequent events generally do not affect that jurisdiction. The "long standing principle" of <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, [a] defect in diversity jurisdiction exists, if at all, only when a case is filed in Federal Court or removed to Federal Court from State Court. If a jurisdictional defect in existence when a suit is filed or removal of a case-whether one party changes its residence thereby destroying complete diversity, or the amount in controversy drops below the jurisdictional amount are not "defects" in the court's diversity jurisdiction at all. <u>303 U.S. 283, 58 S. Ct. 586, 82 L. Ed 845 (1938)</u>. In <u>Grinnell Mut. Reinsurance Co. v. Shierk</u>, JMC steel last argues on that point that even if this claim survives, the damage would be so limited that they may no longer meet the amount-in-controversy threshold for diversity jurisdiction under <u>28 U.S.C. §1332</u>. However, the amount in controversy is determined as of the time the complaint is filed. <u>121 F. 3d 1114, 1116-1117 (7th. Cir. 1997)</u> ("It is well established that the requirements for diversity jurisdiction must be satisfied only at the time a suit is filed.") See also <u>Schulz v. Visionary Props., 2015 U.S. Dist. LEXIS 160756 (Dec. 1, 2015)</u>.

When facing a motion to dismiss for lack of personal jurisdiction under <u>Fed. R. Civ. P. 12(b)(2)</u>, the plaintiff bears the burden of establishing that jurisdiction is proper. <u>U.S. v.

Swiss Am. Bank, Ltd., When an evidentiary hearing is not held to determine whether personal jurisdiction exists, the plaintiff must make a prima facie showing of jurisdiction, rather than the preponderance of evidence standard, by "citing to specific evidence in the record that , 'If credited, is enough to support findings of all facts essential to personal jurisdiction.'" 274 F.3d 610, 618 (1st. Cir. 2001); Snell v. Bob Fisher Enter,. Inc., 115 F. Supp. 2nd. 17, 20 (2000) (quoting Bolt v. Gar-Tec Products, 967 F.2d 671, 675 (1st. Cir. 1992). "To defeat a motion to dismiss when the court uses this method the plaintiff must make the showing as to every fact required to satisfy 'both the form's long-arm statute and the due process of the Constitution.'" Bolt, 967 F.2d at 675. In so doing, the plaintiff must make affimative proof beyound the pleading. Id. (citations omitted). When determining whether the plaintiff has made the requiste prima facie showing, the court considers the pleadings, affidavitt's, and exhibits filed by the parties.  Id., Snell, 115 F. 2d at 20.  For the purposes of such a review, plaintiff's properly supported proffers of evidence are accepted as true and disputed facts are viewed in the light favorable to the plaintiff, however unsupported allegations in the pleadings need not be credited. Bolt, 967 F. 2d 675.

      The Court in Aetna Gas & Sur. Co. v. Jeppeson & Co., held: While the last sentence of FRCP 56(c) permits an "interlocutory" judgment on the whole-issue of liability alone, "although there is a genuine issue as to the amount of damages," and, while there are no provisions in the  FRCP, or 28 U.S.C. §1291 or §1292 which permit a "partial summary judgement on the whole issue of liability in a tort case, subdivision (d) of FRCP 56 does permit the court to effectively find what ultimate material facts do exist and what ultimate "material facts are actually, and in good faith controvered" and make an order "specifying the facts which appear without substantial controversy,... and directing such futher proceedings in the action as are just." 440 F. Supp. 394, 405 Nevada District, Nov. 4, 1977)

In Parchinger v. MGM Grand Hotel-Las Vegas, Inc., held that the amount in controversy is normally determined from the face of the pleadings. 802 F. 2d 362, 364 (9th. Cir. 1986) In seminal case, St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289, 82 L. Ed 845, 58 S. Ct. 586 (1938), the Supreme Court described the test this way:

> The rule governing dismissal for want of jurisdiction in cases brought in federal court is that, unless the law gives a diffrent rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.

It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. Id. (footnotes omitted).

Wright, Miller, and Cooper described the application of the legal certainty test:

> Generally speaking, the legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard:
>
> 1.) When the terms of the Contract limit the plaintiff's possible recovery; 2.) When specific rule of law or measure of damages limits the amount of damages recoverable; and 3.) When independant facts show that the amount of damages was claimed merely to obtain federal court jurisdiction. Id. at page 364

Generally, a dismissal for lack of subject-matter jurisdiction should be without prejudice. See Frigard v. United States, 862 F. 2d 201, 204 (9th. Cir. 1988) (per curiam) Dismissal for lack of personal jurisdiction should also be without prejudice. See Grigsby v. CMI Corp., 765 F. 2d 1369, 1372 n.5 (9th. Cir. 1985).

7.

## OBJECTION'S TO THE MAGISTRATE JUDGE FINDINGS & CONCLUSIONS

### ARGUMENT

The Magistrate Judge Kendall J. Newman correctly note on page 4 of his Findings & Recommendations, at lines 7-8 that the plaintiff's: "Facially, the complaint satisfied the amount-in-controversy, and so the undersigned ordered it be served." (ECF No. 14) See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S. Ct. 596, 82 L. Ed 845 (1938), Aetna Gas & Sur. Co. v. Jeppeson & Co., 440 F. Supp. 394, 405 (Nevada, Nov. 4, 1977, Parachinger v. MGM Grand Hotel-Las Vegas, Inc. 802 F. 2d 362, 364 (9th. Cir. 1986). Now the Plaintiff's on June 3, 2020 filed a Civil Complaint (42 U.S.C. 1983) against the Defendant's (AIG), along with a Laser Copy of both the Contract (Insurance Policy) & Premium Receipt Book to Policy #5433839134, but filed under the wrong Jurisdiction. However, the Magistrate Judge Kendall J. Newman granted the plaintiff's to file a First Amended Complaint with the correct jurisdiction, so on July 31, 2020 the plaintiff's then filed the first amended complaint under "Complete Diversity Jurisdiction." (See FRCP 26(a)(1)(D).)

The Magistrate Judge's Findings & Recommendations at page 2 line's 17-19 recognizes a "Genuine Issue of Material Fact," acknowledging: "Binns believed that in 1954, his grandmother paid $220 up-front payment on the Policy, plus a weekly premium of $55 over twenty years, for a Policy with 3% interest accruing." AGL's position was that Daw paid $28.60 per year, or $0.55 per week, from 1954-74, for a $1,000 benefit with no accrued interest."

Now the Magistrate Judge's Findings & Recommendations on pg. 4 line's 8-11 incorrectly allege: "Defendants, however, raise a factual challenge to plaintiff's assertions of jurisdiction, arguing plaintiff cannot claim good faith his entitlement to these damages." "To settle this matter, the court turns to the extrinsic evidence submitted by both Binns and AGL." The rule governing policy interpretation require us to look first to the

language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. (Civil Code §1638; Reserve Insurance Co. v. Pisciotta (1982) 30 Cal. 3d 800 [180 Cal. Rptr. 628])

    California Civil Code §1638: The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.

    Insurance policy is **but** contract to be construed from language used; and when terms are plain and unambiguous, it is duty of courts to hold parties to such contract. Laventhal v. Fidelity & Casualty Co. (Nov. 5, 1908), 9 Cal. App. 275, 98 P. 1075, 1908 Cal. App. Lexis 138

    California Civil Code §1641: The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.

    California Civil Code §1644: The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless a special meaning is given to them by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

    California Civil Code §1646: A Contract is to be interpreted according to the law and usage of the place where it is to be preformed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made. See also Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1459, 63 Cal. Rptr. 3d 816 (2007) Although California does not apply the Restatement, its statutory factors are simlar. Cohen v. Formula, Inc., 750 F. Supp. 2d 495, 502.

Judicial interpretation is controlled by words, as they are understood in their ordinary and popular sense. (Civ. Code §1644; Waller v. Truck Ins. Exchange, Inc., (1995) 11 Cal. 4th 1, 18 [44 Cal. Rptr. 2d 370].) The function of the court in interpreting an instrument "is simply to ascertain and declare what is in its terms or in substance contained therein, not to

insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc. §1858; Safeco Ins. Co. v. Robert S., supra, (2001) 26 Cal. 4th 758, 762-764 [110 Cal. Rptr. 2d 844]; Jensen v. Traders & General Ins. Co. (1959) 52 Cal. 2d 786 [345 P. 2d 1].)

Now in the Plaintiff's case before the Court, the Magistrate Judge's Findings & Recommendations incorrectly allege:

1.) "Defendants, however, raise a factual challenge to plaintiff's assertions of jurisdiction,"

2.) "To settle this matter, the court turns to the extrinsic evidence submitted by both Binns and AGL." (See Findings & Recommendation pg. 4 lines 8-11)

3.) "AGL's position was that Daw paid $28.60 per year, or $0.55 per week, from 1954-74, for a $1,000 benefit with no accrued interest." (See Findings & Recommendation pg. 2 lines 18-20)

first, the Magistrate Judge's Finding & Recommendation has failed to simply ascertain and declare what is in the Insurance Policy (CONTRACT) #5433839134 terms or in substance contained therein, which the Contract is clear and explicit language involved. The Magistrate Judge's Findings & Recommendations omit's : 1.) the $55.00 weekly premiums (Laser copy of Insurance Policy pg. 4); 2.) 3% interest for 62 years (Laser copy of Insurance Policy pg. 2); 3.) Nonforfeiture Benefits, for a Policy without Indebtedness for which the amount of Insurance is *$100 (Laser copy of Insurance Policy pg. 3) Then the Findings & Recommendations also omit all of this language dealing with values: "The period of Extended Insurance and the amount of Paid-up Endowment Insurance provided herein shall each be such that the net single premium therefor," "All values and net premiums hereunder" "*To obtain any value for this policy," "The terminal value of the policy is an amount equal to the net single premium computed as of the date of default for the Extended Insurance and Pure Endowment, less any indebtedness to the Company secured by the policy." Now all of this very important language is inserted into the Insurance Policy (CONTRACT #5433839134), but the Court used extrinsic evidence to base the Findings & Recommendations upon. On page 4 of the Laser copy of the Insurance Policy (CONTRACT) inside of the weekly premium box

10.

their are two distinct column's (Dollors-Cents), clearly reads that $55.00 WEEKLY PREMIUMS were the agreement between plaintiff's Grandmother (Daw) and National Life & Accident Insurance Company, which all of the extrinsic evidence support. Furthermore, the Court understands that a decimal point (.) is what separates between dollors and cents (See ENCLOSURE). The Defendant's (AIG) attempted to hide the Insurance Policy from the plaintiff's by their refusual to furnish one in January through April of 2018, but chose to provide the Application to the plaintiff's for our records. However, this Application clearly shows the decimal point behind the $220.00 Advance Premium paid on Aug. 04, 1954, plus this 55 that's also alleged on the same page does not have a decimal point either in front or back of it, could only be one amount of money under American Currency laws. (EXHIBIT "B" KEYRON 'S PACKET pgs. 2A, 5A, and 6A) Cal. Civ. Code §1638,1639,1641,1644 1646; Code Civil Proc. §1858.

Secondly, The Magistrate's Judge's Findings & Recommendations clearly inserted thee below Defendant's (AIG) words as an allege factual challenge to plaintiff's assertions of diversity jurisdiction: "NA WEEKLY PREMIUM" ; "0.55 WEEKLY PREMIUM" ; "$28.60 YEARLY PREMIUM" ; "no accrued interest", which neither the Insurance Policy (CONTRACT) or extrinsic evidence support's. (Does not support just one of them.) The Magistrate Judge's Findings & Recommendation is purely based from the Defendant's (AIG) hypothetical, conjecture, and speculations which are not supported by the clear and unambiguous language of the Contract (Insurance Policy #5433839134). A policy provision is ambiguous when it is susceptible to two or more reasonable constructions. (Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal. 4th 1, 18 [44Cal. Rptr. 370].) Language in an insurance policy is "interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." When determining whether a particular policy provides a potential for coverage and a duty to defend, the Court's are guided by the principle that interpretation of an insurance policy is a question of law. (AIU Ins. Co. v. Superior Court (1990) 51 Cal. 3d 807, 818 [274 Cal. Rptr. 820] [hereafter AIU].) The rules governing policy interpre-

tation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. (Civ. Code §1638; Reserve Insurance Co. v. Pisciotta (1982) 30 Cal. 3d 800 [180 Cal. Rptr. 628])

The interpretation of an insurance policy is usually a question of law. Waller v. Truck Ins. Exchange Inc., 11 Cal. 4th 1, 18, [44 Cal. Rptr. 2d 370, 900 P. 2d 619 (1995); See GGIS Ins. Service Inc. v. Superior Court, 168 Cal. App. 4th 1493, 1507, [86 Cal. Rptr. 3d 515 (2008) ("The interpretation of a contract, including the resolution of any ambiguity, is soley a judicial function, unless the interpretation turns on the credibility of extrinsic evidence."). An insurance policy is a contract, so the normal rules of contract interpretation apply. See Safeco Ins. of America v. Robert S., 26 Cal. 4th 758, 762-763, [110 Cal. Rptr. 2d 844, 28 P. 3d 889 (2001)] See also Glasswerk LA, Inc. v. Liberty Ins. Corp., 2021 U.S. Dist. LEXIS 46882.

In the plaintiff's case that is before the Court, the Magistrate Judge's Findings & Recommendation should have relied or been supported by the Contract (Insurance Policy #5433839134), which was the exact direct evidence (Insuance Policy) that the Magistrate Judge Kendall J. Newman allowed the plaintiff's to proceed under Diversity Jurisdiction (28 U.S.C. 1332) at the filing of this Civil Complaint (42 U.S.C. 1983). Futhermore, to establish federal subject matter jurisdiction under diversity rules, the proponent must allege (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332(a)(1); McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936). To determine whether Section 1332(a)'s amount in controversy requirement is met, the court utilizes the "legal certainty" test. see Pachinger v. MGM Grand Hotel-Las Vegas Inc., 802 F.2d 362, 363-364 (9th Cir. 1986). However, the Magistrate Judge's Findings & Recommendations is based upon extrinsic evidence, plus completely ignores the CONTRACT (Insurance Policy #5433839134), which does demonstrate's: 1.) the weekly premiums of

12.

$55.00 paid for over 1040 weeks; 2.) 3% interest for now 67 years; 3.) two (2) Nonforfeiture Benefits for a Policy "without indebtedness" (One inside of the first 20 years [$20,267.66], then the second one subsequent to the 20 years [47 years now].).

The Magistrate Judge's Findings & Recommendations has completely turned away from the Contract #5433839134 (Laser copy of the Insurance Policy), then adopted the Defendant's (AIG) "words" of speculation, hypothetical, and conjecture as factual (Extrinsic Evidense) to now appose plaintiff's "Facially, the complaint satisfied the amount-in-controversy, and so the undersigned ordered it be served." (See Findings & Recommendations at page 4 lines 7-11) See St. Paul Mercury Indem. Co. v. Red Cab Co. 303 U.S. 283, 58 S. Ct. 596, 82 L. Ed. 845 (1938), Aetna Gas & Sur. Co. v. Jeppeson & Co., 440 F. Supp. 394, 405 (Nevada, Nov. 4, 1977, Parachinger v. MGM Grand Hotel-Las Vegas, Inc. 802 F. 2d 362, 364 (9th. Cir. (1986). As a question of law, the interpretation of an insurance policy is reviewed de novo under well-settled rules of contract interpretation. E.M.M.I. Inc. v. Zurich American Ins. Co., 32 Cal. 4th. 465, 470, 84 P. 3d 385, 389, 9 Cal. Rptr. 3d 701 (2004); Waller v. Truck Ins. Exchange, Inc., (1995) 11 Cal. 4th 1, 18 [44 Cal. Rptr. 2d 370,, 900 P. 2d 619].) The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civil Code §1636) Such intent is to be inferred, if possible solely from the written provisions of the contract. (Civil Code §1639) The "clear and explicit" meaning of these provisions interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" (Civil Code §1644), controls judicial interpretation. (Civil Code §1638).

13.

California Code Civil Procedure §1858:

> In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adoped as will give effect to all.

A policy is ambiguous if "it is capable of two or more construtions, both of which are reasonable. "Waller v. Truck Ins. Exchange Inc., 11 Cal. 4th. 1 [44 Cal. Rptr. 2d 370, 900 P. 2d 619,627 (1995)... When an ambiguity exists, the provision should be "interpreted most strongly against the party who caused the uncertainity to exist." Cal. Civil Code §1654. Moreover, in the context of insurance policies, "'any ambiguous terms are resolved in the insureds favor, consistent with the insureds reasonable expectations.'" E.M.M.I. Inc. v. Zurich Am. Ins., 32 Cal. 4th 465 [9 Cal. Rptr. 3d 701, 84 P. 3d 385, 389 (2004) (quoting Safeco Ins. Co. v. Robert S., 26 Cal. 4th 758 [110 Cal. Rptr. 2d 844, 28 P. 3d 889, 893 (2001).

Both the Magistrate Judge's Finding & Recommendations and the Defendant's (AIG) tries to turn an blind eye to the CONTRACT, which clearly and unambiguously demonstrate's that weekly premiums of $55.00 were paid for over twenty (20) years, plus two (2) Nonforfeiture Benefits, which applies to Insurance Policy WITHOUT INDEBTEDNESS, and then 3% Interest for the entire period of the Contract's continuation [62 years] (#5433839134). However, they both suggest that this MAXIMUM AMOUNT OF INSURANCE $1,000* is what's owed to the plaintiff's, but also simply not acknowledge this *Asterisk character too, which fully explain's how the computations are completed each year. (NOTE: Policy years are counted from the Date of Issue and its anniversaries.) The language inside of this Contract is "clear and explicit" with only "ordinary" usage, so plaintiff will do the simple computation on this $1,000 stated in the Schedule:

14.

The *asterisk is a reference mark or an indication of the omissions of how the computations are done in connection to this $1,000.00.

"*For Ages at Issue 2 and over the maximum amount is in effect from Date of Issue; during the first policy year the Amount of Insurance in effect per $100 stated in the Schedule shall be $25 during the first three months and $50 thereafter.✦"

NOTE: $100.00 is divided into the $1000.00= 10 Times;
In the first year for Ages at Issue 2 and over, which the $25.00 gets multiplied by every $100.00 inside of the $1,000.00 ($25.00 X 10= $250.00), then this $250.00 is multiplied by the three Months ($250.00 X 3= $750.00); and finally the last 10 Months gets done by $50.00, the $50.00 gets multiplied by every $100.00 inside of the $1,000.00 ($50.00 X 10= $500.00), then this $500.00 is multiplied by the remaining ten Months ($500.00 X 10= $5,000.00).  So the first year of Insurance Coverage would be $750.00 + $5,000.00= $5,750.00.

Then the ✦ takes over the computation for the remaining 61 years left on the Policy continuation, by either one of these two ways:

1.) $100.00 gets multiplied by every $100.00 inside of the $1,000.00 ($100.00 X 10= $1,000.00, then this $1,000.00 is multiplied by 13 Months ($1,000.00 X 13= $13,000.00), and finally this $13,000.00 gets multiplied by 61 years that's left under the Contract ($13,000.00 X 61= $793,000.00)  For the entire 62 years the Maximum Amount of Insurance would be $5,750.00 + $793,000.00= $798,750.00.

or   2.) $1,000.00 gets multiplied by the number 10 which is proportionately ($1,000.00 X 10= $10,000.00), and finally this $10,000.00 gets multiplied by 61 years ($10,000.00 X 61= $610,000.00),  For the entire 62 years the Maximum Amount of Insurance would be $5,750.00 + $610,000.00= $615,750.00

NOTE: The Contract (Insuranc Policy) says "For Age at Issue 1 the maximum amount shall be in effect commencing on the first anniversary of the Date of Issue;

A policy is ambiguous if "it is capable of two or more constructions, both of which are reasonable." Waller v. Truck Ins. Exchange Inc., 11 Cal. 4th 1 [44 Cal Rptr. 2d 370, 900 P. 2d 619, 627 (1995)... When ambiguity exists, the provision should be "interpreted most strongly against the party who caused the uncertainity to exist." Calif. Civil Code §1654.  Moreover, in the context of Insurance Policies, "'any ambiguous terms are

15.

resolved in the Insureds favor, consistent with the Insureds reasonable expectations.'" E.M.M.I. Inc. v. Zurich Am. Ins., 32 Cal. 4th 465, [9 Cal. Rptr. 3d 701, 84 P. 3d 385, 389 (2004) (quoting Safeco Ins. Co. v. Robert S. 26 Cal. 4th 758, [110 Cal. Rptr. 2d 844, 28 P. 3d 889, 893 (2001). In State Farm Mut. Auto Ins. Co. v. Jacober held, A layman attempting to interpret an insurance policy, however, is not likely to have the legal sophistication to deduce what an insurance company is attempting to accomplish by an ambiguous exclusionary clause; it is on just grounds that exclusions be "conspicuous, plain and clear." (10 Cal. 3d 193, 207 [10-15-1973]) (Steven v. Fidelity & Casuality Co. (1962) 58 Cal. 2d 862, 878 [27 Cal. Rptr. 172, 377 P. 2d 284]; Bodell v. Walbrook Ins. Co. 119 F.3d 1411, 1997 U.S. LEXIS 17813, 97 Cal. Daily Op. Service 5689, 97 D.A.R. 9182.

In the case before the Court, the Magistrate Judge's Findings & Recommendations were clearly not base from the Contract (Insurance Policy #5433839134), but through the Magistrate Judge's own words was based from "extrinsic evidence," although the Contract is unambiguous & explicitly clear. The Magistrate Judge's Findings & Recommendation also allude to the Defendant's (AIG) making a factual challenge to plaintiff's assertions of jurisdiction, therefore has the belief in one of three diffrent stories told by the Defendant's (AIG); "WEEKLY PREMIUMS NA" ; "$28.60 ANNUAL PREMIUMS" ; or "0.55¢ WEEKLY PREMIUMS." However, the Magistrate Judge's Findings & Recommendation must support either the May 23, 2018 version of the policy submitted by the Defendant's (AIG) (See EXHIBIT "C" AIG PACKET 5/23/2018 pgs. 4-7), or the Aug. 27, 2018 version of the policy submitted by the Defendant's (AIG) (See EXHIBIT "D" AIG PACKET 8/27/2018 pgs. 4-7), over the real one which the Laser Copy is made from, which the Plaintiff's does maintain. The Magistrate Judge's Findings & Recommendations is "not" supported by the Laser Copy of the Insurance Policy (Contract), but He allowed the plaintiff's to initially proceed under Diversity Jurisdiction from the Contract.

16.

The Magistrate Judge's Finding & Recommendations noted at page 4 lines 12-13 "As denoted on Binns's copy of the Policy, submitted alongside his original Complaint," which the plaintiff's also provided a Laser Copy of the Premium Reciept Book to the Contract (Insurance Policy #5433839134). The Findings & Recommendations fail to acknowledge the asterisk* inside of the $1000 maximum amount of insurance, which demonstrate's the computation's completed by the plaintiff's on page 15, and calculated for each "Policy year are counted from the Date of Issue and its anniversaries." (See Laser copy of Insurance Policy pg. 4) So the Magistrate Judge Kendall J. Newman went from relying upon the CONTRACT (Insurance Policy #5433839134) on July 31, 2020; approving that Plaintiff's "satisfied the amount-in-controversy," and now incorrectly alleging that the Defendant's brought an factual challenge to the Diversity Jurisdiction from extrinsic evidence. The Finding and Recommendation also failed to acknowledge the fact that the Defendant's (AIG) submitted two (2) distinctly diffrent versions of the policy, with each Schedule page reflecting the weekly premiums as "NA" and ".55¢,"   if the plaintiff's had not been able to come-up with the real Contract (Insurance Policy), the Defendant's (AIG) fraud, intentional misrepresentation, and breach of contract could not be contested... Now the Defendant's (AIG) have tried to dimiss the computations asto how the *asterisk application to the $1,000.00 MAXIMUM AMOUNT OF INSURANCE*, referenced as follows:  "inapplicable formulas" ;  "reduced amount of insurance" ;  "This formula is therefore irrelevant to determining the "value" of the plicy." (See  REPLY IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS pages 2 lines 12-28 and page 3 lines 1-7) The California Civil Code §1638, §1641, §1644, and §1646 all governs interpretation of Contracts, plus the Contract does not mention any exclusionary "inapplicable formulas" concerning the $1,000.00 MAXIMUM AMOUNT OF INSURANCE*, and the computation of either the $798,750.00 or $610,750.00 does not have neither the two Nonforfeiture Benefits or 3% Interest for 62 years added. The language is unambiguous and explicitly clear too, and the Magistrate Judge failed to apply those *asterisk computations.

## PROOF OF SERVICE BY MAIL

I, Keyron L. Binns, AM A RESIDENT OF FOLSOM STATE PRISON IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA. I AM OVER THE AGE OF 18 YEARS, AND I AM/AM NOT A PARTY TO THIS ACTION.

MY PRISON NUMBER IS: #E94600.

MY PRISON ADDRESS IS: **P.O. BOX 950, Folsom, CA 95763.**

ON **August 10**, 20**21** I SERVED A COPY OF THE FOLLOWING DOCUMENT: **OBJECTIONS TO THE MAGISTRATE JUDGES FINDINGS & RECOMMENDATIONS.**

ON THE FOLLOWING PARTIES BY PLACING THE DOCUMENTS INTO A SEALED ENVELOPE WITH POSTAGE FULLY PAID, INTO THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT FOLSOM STATE PRISON (MAILBOX RULE), REPRESA, CALIFORNIA, AND ADDRESSED AS FOLLOWS:

TO: UNITED STATES COURT, OFFICE OF THE CLERK
EASTERN DISTRICT OF CALIFORNIA
501 ISt., STE 4-200
Sacramento, CA. 95814-2322

TO: JODI K. SWICK No. 228634
JOHN T. BURNITE No. 162223
1 Kaiser Plaza, Suite 340
Oakland, CA. 94612

TO: SHARIF ALI GENTRY SR.
13507 Mistle Toe Ave.
Chino, CA. 91710
(Plaintiff #2)

THERE IS DELIVERY SERVICE BY THE UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND/OR THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED **August 10**, 20**21** AT REPRESA, CALIFORNIA.

XX _____
Signature